UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN ALAN PIERCE,    )
           )
    Plaintiff,   )
           )
   v.       )   Case No. 3:18-CV-556 JD
           )
ANDREW SAUL,     )
Commissioner of Social Security,  )
           )
    Defendant.   )

## OPINION AND ORDER

Plaintiff Kevin Pierce appeals the denial of his claim for supplemental security income.

For the following reasons, the Court will remand this matter to the Commissioner for further

proceedings.

## BACKGROUND

Mr. Pierce filed his application for supplemental security income on August 14, 2014,

alleging disability beginning May 30, 2014. His application was denied initially and on

reconsideration. A videoconference hearing was held on April 10, 2017, at which the ALJ heard

testimony from Mr. Pierce, his brother, and vocational expert Carey Seaver. Mr. Pierce was

represented by counsel at this hearing. Ultimately, the ALJ found that Mr. Pierce had some

severe impairments but that he has not been disabled since August 14, 2014. *See* 20 C.F.R. §

416.920. The Appeals Council denied review of the ALJ's decision, making the ALJ's decision

the final determination of the Commissioner.

# STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**DISCUSSION**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.*; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. § 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are

3

a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Pierce now challenges the ALJ's opinion on multiple grounds. The Court need not address all of his arguments, however, because the ALJ committed reversible error by discrediting Mr. Pierce's sight-related and psychological symptomatic complaints based on his conservative treatment without accounting for record evidence indicating that more aggressive treatment was not an option.[1] This error requires remand.

## A. Conservative Treatment

Mr. Pierce lives with severe vision problems. He wears a patch on his right eye, which has been turned outward since childhood, impairing his sight significantly enough for physicians to consider him monocular and blind in that eye. He has to pry his eyelid open just to see out of it. More recently, Mr. Pierce has also experienced episodes of total blindness in his left eye, lasting anywhere from three to ten minutes. (R. 340, 434). Evidence in the record suggests a neurological link between Mr. Pierce's eye impairments and his severe migraine headaches. Mr. Pierce has been diagnosed with exotropia and amblyopia of the right eye, hypertropia and astigmatism of the left eye, and suspected glaucoma in both eyes.

Regarding Mr. Pierce's right eye impairment and its impact on his vision, the ALJ discredited his symptomatic complaints based on his conservative treatment record. In particular,

---

[1] Mr. Pierce also challenges whether the ALJ adequately accounted for his severe migraine headaches in the RFC. The Court need not grapple with this issue given the outcome of this Order, but of course, Mr. Pierce is free to pursue it on remand. The Court further notes that several of Mr. Pierce's remaining contentions need not be addressed because he fails to accompany them with sufficient argument. For example, Mr. Pierce maintains, in one sentence, that his treating physician's September 2016 opinion "should have been credited." [DE 24 at 17] He also criticizes the ALJ's alleged failure to address scattered impairments, such as "field of vision, cellulitis history that had once led to recommendations to amputate, and thyroid deficiency," yet does not articulate what impact the consideration of these items would have had on the ALJ's decision or the RFC.

the ALJ noted that Mr. Pierce "was referred for surgery of the right eye, but [he] did not go to the appointment, as he prefers to have a patch on the eye." (R. 21). Granted, failure to seek medical treatment in the face of claimed illness can be a factor in evaluating credibility. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010). Nonetheless an ALJ "'must not draw any inferences' about a claimant's condition from [his failure to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft*, 539 F.3d at 679 (citing SSR 96-7p). "ALJs have a duty to consider factors like inability to travel, mental illness, or economic constraints that may have prevented claimants from seeking or receiving medical care." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 977 (N.D. Ill. 2013) (citing *Godbey v. Apfel*, 238 F.3d 803, 809 (7th Cir. 2000)).

The ALJ erred here by neglecting to explore or consider explanations for Mr. Pierce's purported failure to undergo surgery. To start, the Court disagrees with the ALJ's suggestion that Mr. Pierce declined surgery *in favor of* wearing an eye patch: "claimant did not go to [surgery], *as he prefers to have a patch on the eye*." (R. 21) (emphasis added). The ALJ cites Dr. Pooja Patel's September 2016 progress notes to support this observation, but those records do not go so far as to provide a *motive* for Mr. Pierce's decision to forego surgery: "Patient was previously referred to Indy for strabismus surgery OD but did not go to appointment. Prefers to patch that eye. Again monocular precautions stressed." (R. 438). At most, Dr. Patel's notes indicate that Mr. Pierce was once referred for and declined surgery, and, separately, that he currently prefers to wear a patch on his right eye. Indeed, the ALJ's assumption that Mr. Pierce prefers wearing an eye patch to surgical intervention is undermined by Mr. Pierce's own report to an eye examiner in December 2014 that he wished to have his right eye removed due to the pain it caused him, which the ALJ herself acknowledged. (R. 21, 360). On top of this, the ALJ failed to recognize

that that same examiner recommended a neurological evaluation after expressing that he was "[d]oubtful that surgery would improve [Mr. Pierce's] vision since eye turn has been since childhood." (R. 361).

Furthermore, Mr. Pierce contends that the ALJ failed to consider the fact that he lacked adequate health care coverage during the relevant time period. The Court agrees. A claimant's inability to afford medication or doctors' visits can excuse the failure to seek such treatment. *Myles*, 582 F.3d at 677; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (noting that "the agency has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment") (citing SSR 96-7p). Here, the record contains evidence that Mr. Pierce lacked health insurance and, at one point, sought treatment for his right eye but was turned away by the medical provider because he could not afford to front thirty percent of the treatment cost. (R. 318-19, 327). Mr. Pierce also testified that his doctor gave him the money necessary to purchase his eye patch (R. 39), and his brother provided a statement that, while Mr. Pierce needs glasses, he "does not have anything due to his finances." (R. 227). And, the record indicates that during his psychological examination, Mr. Pierce informed the examiner that he has been prescribed medication but cannot afford it. (R. 355). The ALJ considered none of this when she discredited Mr. Pierce's symptomatic complaints for failing to undergo more aggressive treatment, such as surgery.

While the Court realizes that an ALJ need not discuss every piece of record evidence in rendering her decision, the ALJ cannot "cherry-pick" details from physicians' reports that support a finding of non-disability while ignoring facts that run counter to her conclusions. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("It is not enough for the ALJ to address mere portions of a doctor's report."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ

has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Nor can she ignore an entire line of evidence that undermines his disability determination. *Zurawski*, 245 F.3d at 887. Yet, that is precisely what the ALJ committed here; she discredited Mr. Pierce's disability claims based on his failure to seek more aggressive treatment while ignoring ample record evidence of financial obstacles to treatment and evidence that called into question the utility of eye surgery. This requires remand.

In addition to his severe right eye impairment, Mr. Pierce suffers from alcoholism and major depressive disorder, mental impairments which the state psychological consultants deemed to be severe. (R. 22, 69, 82). The ALJ, on the other hand, found these impairments to be non-severe and assigned little weight to the consultants' opinions based in part on her observation that Mr. Pierce "reported that he has not received psychological care." (R. 22). The ALJ tacked this observation to her analysis without considering whether Mr. Pierce's alcohol abuse and major depressive disorder influenced his lack of treatment. The ALJ should approach the issue of treatment with caution when a claimant has a mental illness. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). As the Seventh Circuit has recognized, mental illness itself "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). On remand, the ALJ should more carefully consider and explain whether the lack of psychological care impacts the weight to be afforded to the state psychological consultants' opinions, and, for that matter, Mr. Pierce's own symptomatic complaints. Indeed, the record indicates that Mr. Pierce was hospitalized in 2001 and again in 2009 for suicide attempts, another detail that went ignored by the ALJ. (R. 72, 85, 354).

**B.       Additional Considerations on Remand: Step Three Analysis**

Mr. Pierce also attacks the ALJ's assessment of Listing 2.04 (loss of visual efficiency), which concluded in a finding of non-equivalency. Specifically, Mr. Pierce contends that the ALJ's opinion failed to adequately address two of the factors used to calculate visual efficiency: visual *acuity* efficiency and visual *field* efficiency. Mr. Pierce's argument, however, does not support remand because he points to no medical evidence that his vision impairment equals Listing 2.04 (or any listing, for that matter), despite his burden to do so. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."); *see also Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (noting that claimant must present medical evidence supporting his claim and that the evidence allegedly ignored by the ALJ did not show that the impairments met or equaled a listing). Therefore, any perceived error in the ALJ's step three analysis does not itself provide an independent basis for remand.

Nevertheless, the Court flags the ALJ's evaluation of whether Mr. Pierce's vision impairments equal the relevant listings. The ALJ noted in her analysis that "Listing 2.04 requires that the visual efficiency of the better eye after best correction is twenty percent or less." (R. 19). That corresponds to Listing 2.04A. The regulations explain that under that sub-listing, the agency "calculate[s] the visual efficiency percentage by multiplying your visual acuity efficiency percentage by your visual field efficiency percentage and dividing by 100." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 2.007d. Regarding the latter factor (visual *field* efficiency percentage), Listing 2.00A7c states that the agency calculates that figure based on the claimant's kinetic perimetry test results, by adding the number of degrees the claimant can see along the eight

principal meridians of a kinetic visual field chart and dividing by five. The record, however, does not contain any indication that Mr. Pierce ever underwent any kinetic perimetry testing, and so it is unclear to the Court how the ALJ could *affirmatively* conclude, as she did, that Listing 2.04A had not been met when one of its required factors could not itself be determined. The ALJ made no mention of the absence of kinetic perimetry and appears to have based her equivalency finding solely on Listing 2.04A's first factor, visual acuity percentage. On remand, the Court encourages the ALJ to expand upon her step three analysis, and if Mr. Pierce submits updated records that include kinetic perimetry testing, then those results should be considered under Listing 2.04A.

## CONCLUSION

For all the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  August 16, 2019

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
